## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TAKIYAH BYRDSONG                          :
8408 Evelyn Lane                          :
Clinton, MD, 20735                        :
                                          :
          Plaintiff,                      :
                                          :
     v.                                   :     Case No. _____
                                          :     **JURY TRIAL DEMANDED**
ADVANCED AUTOMATION                       :
TECHNOLOGIES, INC.                        :
1305 Wembley Drive                        :
Largo, MD, 20772                          :
                                          :
ADVANCED AUTOMATION                       :
TECHNOLOGIES, INC.                        :
9701 Apollo Drive, Suite 107              :
Largo, MD 20774                           :
                                          :
_Serve on Resident Agent:_                :
Willa E. Robertson                        :
1305 Wembley Drive                        :
Largo, MD, 20772                          :
                                          :
          Defendant.                      :
.................................................

### COMPLAINT

The Plaintiff, **TAKIYAH BYRDSONG**, (hereinafter, at times, "Plaintiff" or "Ms. Byrdsong"), by and through her counsel, **David E. Schreiber, Esq.**, files this Complaint against the Defendant, **ADVANCED AUTOMATION TECHNOLOGIES, INC.**, (hereinafter, at times, "Defendant," "AAT," or the "company") and states to the Court the following:

### PRELIMINARY STATEMENT

1. The Plaintiff, Takiyah Byrdsong, brings this civil rights action to seek damages for personal and pecuniary injuries sustained as a result of the discrimination and retaliatory acts she suffered in violation of Title VII of the Civil Rights Acts of 1964 [42

U.S.C. §2000e, *et seq.*] ("Title VII"), as amended by both the Pregnancy Discrimination Act of 1978 ("PDA") and the Civil Rights Act of 1991 [42 U.S.C. §1981a, *et seq.*], the District of Columbia Human Rights Act of 1977 [DC ST §2-1401.0, *et seq.*] ("DCHRA"), the District of Columbia Family and Medical Leave Act [DC ST §32-501, *et seq.*] ("DCFMLA"), as well as District of Columbia common law.

2. The Defendant, AAT, harassed and discriminated against Ms. Byrdsong by virtue of her gender prior to and during her pregnancy. The Defendant's actions created a hostile work environment that forced Ms. Byrdsong to begin her medical leave of absence a month early, at the recommendation of her doctor. When Ms. Byrdsong returned from her leave under the DCFMLA, the Defendant placed her in an unequal position to that which she held previously, and terminated her shortly thereafter for alleged budgetary reasons. In fact, the Defendant terminated Ms. Byrdsong in retaliation for her participation in the protected activities of filing an EEOC complaint regarding AAT's discriminatory practices and utilizing authorized leave under the DCFMLA.

3. Accordingly, Ms. Byrdsong seeks back pay, front pay, compensatory and punitive damages, and an award of attorneys' fees and costs, pursuant to Title VII, the DCHRA, the DCFMLA, and other relief as the Court may deem equitable and just.

## COMPLIANCE WITH ADMINISTRATIVE REMEDIES

4. Ms. Byrdsong filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about May 22, 2012. On the charging form she filed, she indicated that the charge should be cross-filed with the D.C. Office of Human Rights ("OHR"). However, Ms. Byrdsong received no further communication from the

OHR. After her termination, Ms. Byrdsong filed an additional charge of retaliation on August 23, 2013. Ms. Byrdsong received a right to sue letter, dated December 11, 2013, on December 13, 2013, and the filing of this complaint has occurred within 90 days. A copy of the notice of the right to sue is attached as Exhibit A. *See* 42 U.S.C. §2000e-5(f)(1).

## JURISDICTION AND VENUE

5. The United States District Court for the District of Columbia may exercise original subject-matter jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. 1343(a)(4), and 42 U.S.C. §2000e-5(f)(3) because it arises under the laws of the United States and seeks redress for violations of civil rights. The Court may also maintain supplemental jurisdiction over the District of Columbia statutory and common law claims pursuant to 28 U.S.C. §1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claims within the Court's original jurisdiction that form part of the same case or controversy. This Court may award compensatory and punitive damages pursuant to 42 U.S.C. §1981a and reasonable attorney's fees and costs pursuant to 42 U.S.C. §2000e-5(f), (g), (k) and Rule 54 of the Federal Rules of Civil Procedure.

6. Venue is governed by 42 U.S.C. 2000e-5(f)(3). Venue in this Court is appropriate because the unlawful employment action occurred in this judicial district. It is also proper under 28 U.S.C. §1391(b)(2) because this is the judicial district where a substantial part of the events, which give rise to the claims, occurred.

## PARTIES

7.  The Plaintiff, Takiyah Byrdsong, is an adult African-American female residing in Clinton, Maryland.  The Plaintiff, at all relevant times herein, was an employee of the Defendant.

8.  The Defendant, Advanced Automation Technologies, Inc., a Maryland corporation, is a technology support company, with its principal offices located at 1305 Wembley Drive, Largo, MD, 20772, and 9701 Apollo Drive, Suite 107, Largo, MD 20774. The company provides technology services to the federal government, and places many of its employees to work directly with government agencies.  During her employment with AAT, Ms. Byrdsong worked with the Government Accountability Office ("GAO") in their office, located at 441 G Street, NW, Washington, DC, 20548.  Ms. Byrdsong's direct supervisor at AAT also worked at the GAO office.  The Defendant's discriminatory behavior occurred while Ms. Byrdsong worked at the GAO's office in the District of Columbia.

9.  The Defendant, Advanced Automation Technologies, Inc., is a "person" within the meaning of 42 U.S.C. §2000e(a), and an "employer" within the meaning of 42 U.S.C. §2000e(b). It is also an "employer" within the meaning of the District of Columbia Human Rights Act of 1977 §2-1401.02 and the District of Columbia Family and Medical Leave Act §32-501.

## STATEMENT OF FACTS

10.  Ms. Byrdsong graduated from Trinity University in 2001, with a major in business administration.  She also earned a Masters in Science Administration from Trinity University in 2003.

4

11.  Ms. Byrdsong was hired by AAT in February, 2008 to work as a financial management analyst/accountant.  She was assigned to work with the GAO's Control Administration Services Office/Financial Management in March, 2008, at their office in the District of Columbia.  Valencia Covert was the Project Manager and Ms. Byrdsong's direct superior at AAT.

12.  On or about April 21, 2008, Valencia Covert resigned from AAT.  She recommended that Ms. Byrdsong assume her position as Project Manager, stating that Ms. Byrdsong was more familiar than even she was with the GAO.  Ms. Byrdsong applied for the position, but Willa Robertson, President of AAT, offered it to Monica Kendrick, who accepted the position.

13.  Ms. Kendrick resigned as Project Manager shortly after assuming the position. Nana Yankey, a male AAT employee, was selected to be Acting Project Manager in August 2008, and became Ms. Byrdsong's supervisor.

14.  Ms. Byrdsong was a productive and model employee.  In 2010 and 2011, Ms. Byrdsong received GAO performance awards for her work.  Mr. Yankey praised Ms. Byrdsong's performance in an email dated October 22, 2010, and during a performance review in March 2011, Ms. Byrdsong's performance was described as "above average."

I.  **DISCRIMINATION PRIOR TO MS. BYRDSONG'S PREGNANCY**

15.  On or about March 1, 2008, Alan Millington, a contractor for SRA International, Inc. at the GAO, informed Ms. Byrdsong that Mr. Yankey told him that Ms. Byrdsong is "the type of woman he dates."  This comment made Ms. Byrdsong uncomfortable.

16.  In July 2008, Ms. Byrdsong had lunch with James Byrdsong, Ms. Byrdsong's fiancé at the time and current husband, and employees of AAT and the GAO at Bar Louie,

a restaurant in the District of Columbia. Mr. Yankey told Mr. Byrdsong that once Mr. Byrdsong got married, Ms. Byrdsong would not be able to "go out and do things [she] would normally do." Mr. Byrdsong informed Mr. Yankey that he should only speak about his relationship with his own wife.

17.   Mr. Yankey exhibited a pattern of discrimination generally towards female employees during his tenure with AAT. Kendra Smith was Mr. Yankey's administrative assistant in February, 2009, and was his fourth such assistant. The previous assistants had voiced numerous complaints regarding Mr. Yankey and resigned. Ms. Smith also had issues with Mr. Yankey, and after several informal complaints were ignored, she filed a formal complaint with AAT and the EEOC in February, 2010. AAT asked Ms. Byrdsong to testify on Mr. Yankey's behalf against Ms. Smith, but she refused. A month after filing her complaint, Ms. Smith was reprimanded for alleged "performance reasons" as a result of her complaint against Mr. Yankey. On or about March 5, 2010, Ms. Smith resigned from AAT. Sherrie McCoy was hired to replace Ms. Smith in May, 2010. Ms. Byrdsong suggests that these women were subjected to a pattern of discriminatory behavior by Mr. Yankey and AAT, similar to conduct complained of by Ms. Byrdsong.

18.   In August, 2008, Mr. Yankey approached Ms. Byrdsong to ask for "marital advice." Ms. Byrdsong informed Mr. Yankey that she was not comfortable discussing her personal life with him. Mr. Yankey ignored her request, and began to email Ms. Byrdsong marital questions and unsought marital advice. Mr. Yankey's emails continued throughout Ms. Byrdsong's employment with AAT and made her uncomfortable. Mr. Yankey confronted her in person again for "marital advice" in February, 2010. Once again, Ms. Byrdsong stated she was uncomfortable with his questions.

6

19. In addition to Mr. Yankey's unwelcome marital comments, he would also make inappropriate comments about females' appearances, including Ms. Byrdsong and others, especially Ms. Smith, in front of Ms. Byrdsong. The comments included references to body parts of the female employees.

20. In February 2009, Mr. Yankey began assigning Ms. Byrdsong projects outside of her job description, in addition to her other duties. Ms. Byrdsong requested help from her superiors to handle the increased workload. The requests were ignored.

21. Approximately one year after being appointed Acting Project Manager, Mr. Yankey began to micro-manage Ms. Byrdsong and Ms. Smith. However, he showed more interest in their personal lives and activities than their work. He constantly asked about their whereabouts and who they were talking to. On or about February 1, 2010, Mr. Yankey initiated a sign in/sign out procedure for Ms. Byrdsong and Ms. Smith to fully monitor their behavior.

22. On or about April 21, 2010, Ms. Byrdsong filed an internal complaint against Mr. Yankey for an incident in which he spoke to her in an "aggressive" manner, and with his fists in a balled position, making Ms. Byrdsong very uncomfortable. On or about April 23, 2010, Mina Darfoor, AAT Program Manager, held a meeting with Ms. Byrdsong and Mr. Yankey to discuss the complaint. No action was taken by AAT, and Ms. Byrdsong became discouraged by the company's failure to act.

23. Approximately a year later, during a performance review in March 2011, Ms. Byrdsong again voiced her concerns regarding the increased workload and requested a raise. AAT denied her request, and made no attempt to reduce her workload.

24. In July, 2011, Mr. Yankey threatened Ms. Byrdsong that her job was in jeopardy

7

because of an alleged mistake. Ms. Byrdsong contacted Ms. Darfoor and Lavonne Hill, the Contract Officer at GAO, to ask if her job was in jeopardy. Both parties confirmed that she had no negative complaints, and that her job was secure.

25. As a result of Mr. Yankey's baseless accusations and threats, Ms. Byrdsong requested to transfer to another position. AAT denied her request, and had a meeting with Ms. Byrdsong in August, 2011, to discuss her issues with Mr. Yankey and her workload. Subsequently, Ms. Byrdsong had monthly meetings with Ms. Darfoor to discuss work over lunch. No changes or reprimands occurred as a result of the meetings or her complaints.

26. Beginning in 2012, the Contract Officer Technical Representative for the GAO, Teresa Placentra, recommended that Mr. Yankey attend classes on management skills, which apparently offended Mr. Yankey. Ms. Placentra had previously defended Mr. Yankey's behavior.

27. Thereafter, Ms. Byrdsong became progressively frustrated by Mr. Yankey's abusive and inappropriate behavior, and felt increasingly uncomfortable at work.

## II. MS. BYRDSONG ANNOUNCES HER PREGNANCY

28. On or about January 3, 2012, Ms. Byrdsong announced her pregnancy, and requested maternity leave. Ms. Darfoor asked Ms. Byrdsong if she had informed Mr. Yankey of the pregnancy. Ms. Darfoor further stated that the pregnancy must be why Ms. Byrdsong was distracted at work. Ms. Byrdsong asked her to elaborate, but Ms. Darfoor failed to do so. Ms. Darfoor's statement upset Ms. Byrdsong and was discriminatory. In fact, Ms. Byrdsong was performing her work admirably given the increased workload, as well as her severe morning sickness, and was troubled by the inference that because she was pregnant she was somehow distracted. Ms. Byrdsong became even more disturbed

8

when AAT failed to approve her leave for several months after she made the announcement. Ms. Byrdsong eventually received approval for leave on March 21, 2012, from April 30, 2012 through July 20, 2012.

29.  On or about February 15, 2012, Ms. Byrdsong was assigned by AAT to draft a Standard Operating Procedures ("SOP") manual for her temporary replacement at the GAO.  This task was outside of the scope of her employment, as well as contrary to the policy of the GAO.  Ms. Byrdsong expressed her concern to Ms. Darfoor that this was inappropriate, and too much of an additional responsibility to handle, especially during her pregnancy.  Ms. Darfoor ignored her concerns, and stated that the SOP would only be used internally.  In fact, AAT apparently wanted Ms. Byrdsong to create a manual for a permanent replacement for her, contrary to their representations and promises that she would resume her position at the GAO offices when she returned from maternity leave.

30.  In March, 2012, as a result of the increased workload, Ms. Byrdsong's health deteriorated; she began to suffer from chronic pain and an elevated heart rate.  She began to visit her doctor on a bi-weekly basis.

31.  On or about March 9, 2012, Mr. Yankey had another incident of rage wherein he yelled and screamed at Ms. Byrdsong for alleged non-performance because she had not yet completed the SOP.  Ms. Byrdsong was troubled by the added stress and hostile work environment that Mr. Yankey created by his behavior.  Ms. Byrdsong filed a formal complaint with AAT.

32.  On or about March 9, 2012, AAT informed the GAO that Ms. Byrdsong would soon begin maternity leave, and offered Ms. McCoy as a temporary replacement.  The GAO later rejected Ms. McCoy because she was unqualified for the position.

9

33.   On or about March 19, 2012, Ms. Byrdsong, Ms. Darfoor, and Mr. Yankey met to discuss the incident of March 9, 2012. Ms. Darfoor failed to act and Mr. Yankey was not reprimanded for his outrageous behavior. Ms. Byrdsong became increasingly worried about her health in the work environment, especially because Mr. Yankey was upset that Ms. Darfoor did not reprimand Ms. Byrdsong for allegedly poor work performance. In fact, Ms. Byrdsong was performing the requirements of her job successfully, and was still attempting to write the SOP, a task not in her job description.

34.   In March, 2012, Ms. Byrdsong completed a draft of the SOP, and Mr. Yankey sent it to the GAO for review. This was contrary to the GAO policy and Ms. Darfoor's previous statement that it was an internal document. Ms. Byrdsong asked Ms. Hill and Carmencita Jones, the GAO Contracting Officer, if this was appropriate, and they both confirmed that contract employees cannot write SOP manuals for the GAO.

35.   On or about March 21, 2012, Ms. Byrdsong again requested assistance, with her increased workload and the hostile work environment created by Mr. Yankey, to Ms. Robertson. In a breach of company policy, Ms. Robertson failed to respond and did nothing.

36.   During this time period, Ms. Byrdsong made repeated calls to the EEOC to describe the way she was treated and the work environment. Ms. Byrdsong was advised by an investigator for the EEOC that she was a victim of gender/pregnancy discrimination.

### III.   THE DEFENDANT CREATES PRETEXT FOR MS. BYRDSONG'S TERMINATION

37.   On or about Friday, March 23, 2012, Ms. Robertson emailed Ms. Byrdsong late in the afternoon to request that she attend a meeting at AAT headquarters on Monday, March 26, 2012. Ms. Byrdsong was not aware of the email until the morning of March 26,

2012. She was unable to attend the meeting because she lacked proper transportation. Ms. Robertson accused Ms. Byrdsong of ignoring the meeting. Ms. Byrdsong became so distressed that she felt ill and left work early to visit her doctor. The doctor faxed over a note to AAT that Ms. Byrdsong should be placed on medical leave "until further notice" because of health risks to her and her unborn child.

38. On or about March 26, 2012, AAT sent a letter of reprimand to Ms. Byrdsong for alleged deficiencies, including inappropriate communication with the GAO regarding the SOP. This charge was false because in August, 2009, Ms. Placentra had informed Mr. Yankey that Ms. Byrdsong could speak with anyone at the GAO regarding work matters. The letter was a pretext to terminate Ms. Byrdsong at a later date.

39. On or about March 29, 2012, AAT acknowledged receipt of the March 26, 2012 note from Ms. Byrdsong's doctor, and placed her on a medical leave of absence. The acknowledgment stated that her leave under DCFMLA still stood approved from April 30, 2012 through July 20, 2012.

## IV.   THE DEFENDANT RETALIATES AGAINST MS. BYRDSONG

40. On or about March 30, 2012, Ms. Byrdsong received a voicemail message from Ms. Darfoor, asking her to return "GAO badge, token, and any cubicle key." Ms. Byrdsong called Veronica Bell, a security official at the GAO, to ask if this was GAO policy. Ms. Bell stated that it was not. Further, Ms. Byrdsong was aware that this was not AAT policy.

41. On or about April 9, 2012, AAT prepared to terminate Ms. Byrdsong's employment for exercising her rights and using maternity leave. AAT deactivated her email account and her phone, and removed her belongings from her office. Such actions were not typical, and concerned Ms. Byrdsong. Clifton Holmes-Smith was hired to take over her

11

position at the GAO and moved into her office.  However, Ms. Byrdsong was assured that she was still an employee and was simply on maternity leave, and that Mr. Holmes-Smith was only a temporary replacement.

42.  On or about April 30, 2012, Mr. Yankey gave Delaney Miles, a GAO employee, a box full of Ms. Byrdsong's belongings for Ms. Robertson to pick up.  Mr. Miles contacted Ms. Byrdsong to ask why she resigned.  Ms. Byrdsong responded that she did not resign, and was merely on maternity leave.

43.  On or about April 30, 2012, Ms. Byrdsong received a paycheck that was missing $450.00, which was used to pay her full health insurance premium.  She emailed Ms. Robertson, who informed her that it was her responsibility to pay 100% of the premiums while she was on leave.  Ms. Byrdsong received a letter to that effect on May 1, 2012.

44.  On or about April 30, 2012, the EEOC contacted Ms. Byrdsong to ask why she had not filed a formal complaint.  Ms. Byrdsong replied that she was already on maternity leave and under significant stress.  The EEOC advised her to file as soon as possible.  She filled out a questionnaire that same date, and filed a formal charge on May 22, 2012.

45.  On May 16, 2012, Ms. Byrdsong gave birth to a daughter, Madison Byrdsong, at Georgetown University Hospital.

46.  On June 27, 2012, Ms. Byrdsong had postpartum screening and a health check-up.  The doctor cleared her to return to work on July 23, 2012, the end date of leave under DCFMLA.  The doctor faxed the report to AAT.

47.  On or about July 13, 2012, Ms. Byrdsong finally received communication from AAT, instructing her to report back to work on July 23, 2012, for a new assignment.  This was the first time Ms. Byrdsong was made aware that she would not be returning to her

position at the GAO.

48. On or about July 18, 2012, Ms. Byrdsong spoke with Jacquelyn Gandy of the EEOC about her new assignment. Ms. Gandy stated that AAT was aware of her complaint, and advised her that any adverse action against Ms. Byrdsong could be retaliation.

49. On July 23, 2012, Ms. Byrdsong returned to AAT and learned that her new position was Senior Management Analyst, which was different than her previous position. The new position was considered part of the overhead and general and administrative costs of AAT, and was not financed by a contract like her previous position. She was not returned to an equivalent position as required by DCFMLA.

50. After returning to work, Ms. Byrdsong asked Ms. Robertson where she could breast pump, and was told the kitchen or file room. After several weeks, Ms. Robertson complained that Ms. Byrdsong spent too much time breast pumping, and ordered her to shorten her lunch break as it was unfair to her fellow employees.

51. On or about July 30, 2012, Ms. Byrdsong spoke with Ms. Hill, the Contract Officer at the GAO, who was surprised to discover that Ms. Byrdsong was not returning to her position at the GAO as expected. AAT had apparently never informed the GAO that Ms. Byrdsong was being permanently replaced.

52. On or about September 25, 2012, Ms. Byrdsong received a termination letter from AAT, stating that she was being terminated because of alleged poor company performance and a need to reduce overhead. This was untrue and a pretext and directly related to AAT permanently removing Ms. Byrdsong from her previous position as a result of her pregnancy and filing of an EEOC complaint.

13

## CAUSES OF ACTION

### COUNT I
### (HOSTILE WORK ENVIRONMENT UNDER TITLE VII)

53. The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 52, and all subsequent allegations of facts, as though set forth fully and at length herein.

54. Ms. Byrdsong is a female, and, as such, is a member of a protected class under Title VII. Title VII states that it is an unlawful employment practice for an employer:

> To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2.

55. Beginning with the appointment of Mr. Yankey as Ms. Byrdsong's supervisor, and intensifying with the announcement of her pregnancy, she has been subjected to a hostile work environment.   Ms. Byrdsong has been yelled at, asked inappropriate questions, subjected to inappropriate sexual comments, assigned tasks outside of her job description, and micro-managed to a significant degree that was far more personal than professional.  Similar complaints have been made by other female employees about Mr. Yankey and AAT, thus revealing a pattern of discriminatory behavior by the Defendant. AAT was aware of this behavior and made no attempt to discipline Mr. Yankey or prevent future occurrences.

56. As a direct and proximate result of the Defendant's severe and pervasive harassment, Ms. Byrdsong, on the advice of her doctor, began medical leave earlier than expected due to the increased stress brought on by the Defendant's behavior and creation

of a hostile work environment.

57.  As a direct consequence of the Defendant's violation of Ms. Byrdsong's rights under Title VII, Ms. Byrdsong has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT II

### (HOSTILE WORK ENVIRONMENT UNDER DCHRA)

58.  The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 57, and all subsequent allegations of facts, as though set forth fully and at length herein.

59.  This action arises under the District of Columbia Human Rights Act, Title 2, Chapter 14, Subchapter II, Part B, § 2-1402.11(a)(1), which states as follows:

> It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual:
> > (1) *By an employer.* – To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotions; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

60.  As described fully in the preceding paragraphs, specifically paragraph 55, the Defendant created a hostile work environment for Ms. Byrdsong.  This environment was

a violation of her rights under DCHRA.

61. As a direct consequence of the Defendant's violation of Ms. Byrdsong's rights under DCHRA, Ms. Byrdsong has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT III

## (PREGNANCY DISCRIMINATION UNDER TITLE VII, AS AMENDED BY THE PDA)

62. The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 61, and all subsequent allegations of facts, as though set forth fully and at length herein.

63. Title VII, as amended by the PDA, states that it is an unlawful employment practice for an employer:

> To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2.

Further, 42 U.S.C. §2000e(k) states:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes.

64. The Defendant denied Ms. Byrdsong her employment rights, as guaranteed by Title VII, as amended by the PDA, by treating her in a disparate fashion and discriminating

16

against her in her employment on the basis of her pregnancy and her gender.

65. The Defendant nearly doubled Ms. Byrdsong's workload after she announced her pregnancy. Indeed, a significant portion of the increased work was Ms. Byrdsong unknowingly drafting a manual for her permanent replacement. The increased workload and stress brought upon by the Defendant's actions caused Ms. Byrdsong, on the advice of her doctor, to begin medical leave earlier than expected.

66. After returning from maternity leave, Ms. Byrdsong was given the position of Senior Management Analyst. The new position was considered part of the overhead and general and administrative costs of AAT, and was significantly different than her prior position as a contractor with the GAO. Further, AAT made it difficult for Ms. Byrdsong to breast pump at work, and the President of AAT, Ms. Robertson, complained that Ms. Byrdsong was being unfair to the other employees by breast pumping.

67. Ms. Byrdsong's new position was allegedly part of the overhead and general and administrative costs of AAT, as opposed to being financed by a contract. AAT terminated Ms. Byrdsong shortly after her return from maternity leave on the pretextual grounds of reducing overhead costs. In fact, the termination was a result of Ms. Byrdsong exercising her protected rights.

68. Prior to the termination of her employment, Ms. Byrdsong had maintained a good employment record with AAT, receiving several awards for her work with the GAO, and was otherwise a good, efficient, and successful employee.

69. The Defendant undertook the actions alleged herein in a wanton disregard for Ms. Byrdsong's constitutional and statutory rights. As a direct consequence of the Defendant's violation of Ms. Byrdsong's rights under Title VII, Ms. Byrdsong has suffered

monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT IV

## (PREGNANCY DISCRIMINATION UNDER DCHRA)

70.  The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 69, and all subsequent allegations of facts, as though set forth fully and at length herein.

71.  This action arises under the District of Columbia Human Rights Act, Title 2, Chapter 14, Subchapter I, § 2-1401.05 (b), which states as follows:

Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and this requirement shall include, but not be limited to, a requirement that an employer must treat an employee temporarily unable to perform the functions of her job because of her pregnancy-related condition in the same manner as it treats other temporarily disabled employees.

Further, D.C. Code 2001, § 2-1402.11(a)(1) states as follows:

It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual:
>(1) *By an employer.* – To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotions; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

18

72. As described fully in the preceding paragraphs, specifically paragraphs 65 through 68, the Defendant denied Ms. Byrdsong her employment rights, as guaranteed by DCHRA, by treating her in a disparate fashion and discriminating against her in her employment on the basis of her gender and her pregnancy.

73. The Defendant undertook the actions alleged herein in a wanton disregard for Ms. Byrdsong's constitutional and statutory rights. As a direct consequence of the Defendant's violation of Ms. Byrdsong's rights under DCHRA, Ms. Byrdsong has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT V

## (RETALIATION IN VIOLATION OF DCFMLA)

74. The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 73, and all subsequent allegations of facts, as though set forth fully and at length herein.

75. Ms. Byrdsong is a member of a protected class under the D.C. Family Medical Leave Act ("DCFMLA") and has been employed by the employer (AAT) for more than one year and had worked in excess of 1,000 hours in the previous year. D.C. Code 2001§32-501.

76. Pursuant to DCFMLA, Ms. Byrdsong, was entitled to 16 total workweeks of family leave because of her pregnancy. D.C. Code 2001§32-502.

19

77. Ms. Byrdsong requested and received approval to take maternity leave under DCFMLA. As a result of Ms. Byrdsong requesting and subsequently using maternity leave, a protected activity under the DCFMLA, AAT retaliated against her and re-assigned Ms. Byrdsong to a new position when she returned from maternity leave, before ultimately terminating her shortly thereafter. The new position was not equivalent to her original position, as required by the law.

78. The Defendant's wrongful termination of Ms. Byrdsong was a violation of the DCFMLA by virtue of the following language: " (a) It shall be unlawful for any person to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter." D.C. Code §32-507. The close temporal proximity between the protected activity and the adverse action establishes the causal connection between the two events, and is a violation of the DCFMLA.

79. As a direct and proximate result of Defendant's retaliatory actions, Ms. Byrdsong has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

80. Ms. Byrdsong is entitled to damages pursuant to DC Code §32-509(b)(6) for back pay and benefits, liquidated damages or "Consequential damages not to exceed an amount equal to 3 times the amount determined under subparagraph (A) of this paragraph plus any medical expenses not covered by the health insurance of the employee."

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT VI

## (RETALIATION UNDER TITLE VII, AS AMENDED BY THE PDA)

81.  The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 80, and all subsequent allegations of facts, as though set forth fully and at length herein.

82.  Title VII states that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. §2000e-3(a).

83.  The Plaintiff filed a complaint with the EEOC regarding the discriminatory actions of AAT and its management.  As a result of Ms. Byrdsong's complaints, a protected activity under Title VII, AAT retaliated against her and re-assigned Ms. Byrdsong to a new position when she returned from maternity leave, before ultimately terminating her shortly thereafter.  The close temporal proximity between the protected activity and the adverse action establishes the causal connection between the two events.  The Defendant violated her rights by engaging in such an action.

84.  As a direct and proximate result of Defendant's retaliatory actions, Ms. Byrdsong has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT VII

## (RETALIATION UNDER DCHRA)

85.   The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 84, and all subsequent allegations of facts, as though set forth fully and at length herein.

86.   DCHRA states that:

It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.   D.C. Code 2001§2-1402.61(a).

87.   The Plaintiff filed a complaint with the EEOC regarding the discriminatory actions of AAT and its management. As a result of Ms. Byrdsong's complaints, a protected activity under the DCHRA, AAT retaliated against her and re-assigned Ms. Byrdsong to a new position when she returned from maternity leave, before ultimately terminating her shortly thereafter.   The close temporal proximity between the protected activity and the adverse action establishes the causal connection between the two events.   The Defendant violated her rights by engaging in such an action.

88.   As a direct and proximate result of Defendant's retaliatory actions, Ms. Byrdsong has suffered monetary damages, including, but not limited to, lost wages, lost benefits, damage to her personal and professional reputation, mental distress and anguish.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT VIII

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

89.  The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 88, and all subsequent allegations of facts, as though set forth fully and at length herein.

90.  Beginning with the appointment of Mr. Yankey as Ms. Byrdsong's supervisor, and intensifying with the announcement of her pregnancy, she has been subjected to severe harassment while employed at AAT.  Ms. Byrdsong has been yelled at, asked inappropriate questions, assigned tasks outside of her job description, and micro-managed to a significant degree.  Similar complaints have been made by other female employees about Mr. Yankey and AAT.  AAT failed to address the complaints of Ms. Byrdsong and others.

91.  As a direct and proximate result of the Defendant's extreme and outrageous conduct, Ms. Byrdsong suffered severe mental distress.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT IX

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

92.  The Plaintiff hereby incorporates by reference the facts set forth in paragraphs 1 through 91, and all subsequent allegations of facts, as though set forth fully and at length

herein.

93. Beginning with the appointment of Mr. Yankey as Ms. Byrdsong's supervisor, and intensifying with the announcement of her pregnancy, she has been subjected to severe harassment while employed at AAT. Ms. Byrdsong has been yelled at, asked inappropriate questions, assigned tasks outside of her job description, and micro-managed to a significant degree. Similar complaints have been made by other female employees about Mr. Yankey and AAT. AAT failed to address the complaints of Ms. Byrdsong and others.

94. As a direct and proximate result of the Defendant's negligence in addressing any of Ms. Byrdsong's concerns, Ms. Byrdsong suffered severe mental distress.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## RELIEF REQUESTED

WHEREFORE, the premises considered, the Plaintiff, **TAKIYAH BYRDSONG**, demands judgment against the Defendant, granting the following relief as to all counts such that the Court:

a.    Award to Plaintiff her lost income (both back pay and front pay, at an appropriate salary) together with other employment benefits;

b.    Award to Plaintiff compensatory damages;

c.    Award to Plaintiff punitive damages;

d.    Award to Plaintiff liquidated damages;

e.    Award to Plaintiff pre-judgment and post-judgment interest;

24

f.      Award to Plaintiff her reasonable attorneys' fees and costs and disbursements

        associated with prosecution of this action; and

g.      Such other and further relief as this Court may deem just and proper.

I, **TAKIYAH BYRDSONG**, do hereby solemnly declare and affirm under the penalties of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

**TAKIYAH BYRDSONG**

Respectfully submitted,

DAVID E. SCHREIBER, P.C.

By:
David E. Schreiber, Esq., #152082
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
(301) 951-1599 (fax)
*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial in this action.

David E. Schreiber, Esq.